JOHN T. NALE ET AL v. B. F. CARROLL, JR. ET AL

No. A-4660. Decided April 18, 1956.
Rehearing overruled May 16, 1956.
(289 S.W. 2d Series 743)

*Gossett & Gossett, Hurst & Burke,* all of Longview, and *Harry S. Pollard,* of Austin, for petitioner.

The Court of Civil Appeals erred in holding that petitioners are not cotenants in the Moore Rule 37 permit and do not have a vested right in such permit; in affirming the trial court's judgment that petitioners take nothing; that petitioners are estopped to claim a share of the production because of failure to assert claim thereto before or while the well was being drilled, and in failing to sustain appellants' point of error that the trial court erred in concluding that petitioners are barred by laches since they did not file suit or assert a claim to production from the Carroll well before the well was drilled. Gulf Land Co. v. Atlantic Refining Co., 134 Texas 59, 131 S.W. 2d 73; Marrs v. Railroad Com., 142 Texas 293, 177 S.W. 2d 941; Hassie Hunt Trust v. Proctor, 215 Miss. 84, 60 So. 2d 551.

*A. A. Garrett,* of Dallas, *Spruiell, Lowry, Potter & Lasater* and *Chas. F. Potter,* of Tyler, for respondents.

Since petitioners offered no evidence to prove that the tracts owned by them would produce oil if they were drilled, the trial court could render no other judgment than to deny them relief. States v. Phillips Petroleum Co., Civ. App., 161 S.W. 2d 366, error refused; Japhet v. McRae, Com. App., 276 S.W. 669; Cox v. Campbell, 135 Texas 428, 143 S.W. 361.

MR. JUSTICE SMITH delivered the opinion of the Court.

The opinion rendered in this cause on the 14th day of December, 1955, is withdrawn and the following is rendered as the opinion of the Court.

This suit was filed May 16, 1951 by John T. Nale, as plaintiff, against the respondents for an accounting, and to adjudge plaintiff entitled to interests in the production from an oil well in the East Texas oil field, subject to his proportionate part of the drilling and operating expenses. Herman Leath and wife intervened by asserting the same cause of action against respondents because of their ownership of a part of the minerals in and under a tract of .51 acres. Nale asserted ownership of .093 acres of said tract; the Leaths claimed the minerals in and under .25 acres of said tract, and the respondent, Mrs. Longshore, claimed ownership of the tract of .17 acres upon which a producing oil well is located. This well was drilled by B. F. Carroll, Sr., lessee of Mrs. Longshore. The petitioners contend that this case is distinguished from the case of Ryan Consolidated Petroleum Corporation v. W. L. Pickens et al 155 Texas 221, 285 S.W. 2d 201, decided by this Court on the 23rd day of November, 1955, and that the present case is not controlled by the Ryan case, and further that the non-apportionment doctrine announced in the case of Japhet v. McRae, Texas Com. App., 276 S.W. 669, and followed in the Ryan case is not applicable here, as held by the Court of Civil Appeals in its judgment affirming that of the trial court denying petitioners any recovery. 266 S.W. 2d 519, 526.

The facts material to a decision are as follows:

Herman Leath and wife acquired fee title to a .51 acre tract, (sometimes referred to as a one-half acre tract), situated in the City of Kilgore, Gregg County, Texas, in June, 1928. In 1935, and prior to February of that year, Leath and wife, the

fee owners, leased to one R. E. Moore the entire tract of .51 acres for oil and gas purposes. In April, 1935, the Railroad Commission of Texas granted to Moore a permit to drill an oil well on the .51 acre Leath tract as an exception to spacing Rule 37. Moore's application for the permit, dated February, 1935, specified the location of the well, and the Railroad Commission granted Moore permission to drill the well to be spaced as follows: "101 feet southwest of the northeast line; 25 feet southeast of the northwest line."

In October, 1935, while the Moore lease was still in effect, Leath conveyed strips from the northeast and east sides of the .51 acre tract to the City of Kilgore for use as a street, but reserved to himself all mineral interests therein.

The lease to Moore was not introduced in evidence, but all parties concede that it was executed and delivered prior to February, 1935. No proof of deferred rentals having been made, the lease expired one year from its date. Moore did not drill the well authorized by the permit.

On May 22, after the lapse of the Moore lease of the .51 acre tract, Leath and wife conveyed to one Laird a tract of .093 acres out of the tract of .51 acres, and this tract was on the same day conveyed to John T. Nale, petitioner.

On July 21, 1945, Leath and wife conveyed by metes and bounds to Mrs. Longshore a tract of .17 acres out of the original .51 acres. On January 6, 1950, Mrs. Longshore executed an oil and gas lease covering the tract of .17 acres to B. F. Carroll, as lessee, for a primary term of six months. Carroll did not request or receive from the Railroad Commission a permit to drill the tract of land described in his lease, but instead elected to operate under the permit which had been granted to Moore in 1935. The well which came in as a producer on February 25, 1950, was drilled at the exact location established in the Moore permit, and, of course, was on the Longshore .17 acres tract.

Petitioners' first point is:

"The Court of Civil Appeals erred in overruling the second point of petitioners, as appellants, that the trial court erred in its third conclusion of law that petitioners are not cotenants in the Moore Rule 37 Permit and do not have a vested interest in such permit."

The evidence shows and the trial court found, as a fact, that petitioner, Nale, on January 15, 1950, executed an oil and gas lease ·in favor of Ralph Massad, as lessee, and that the lease covered only the .093 acres tract theretofore conveyed to Nale; that Ralph Massad's application for a permit to drill a well on said Nale tract was denied by the Railroad Commission on April 18, 1950; that on January 22, 1951, after the expiration of the Massad oil and gas lease, Nale made an application and was denied a permit to drill his tract; that no well was drilled on the Nale tract, and no evidence was offered that oil could be produced from the Nale .093 acres tract.

The trial court in its findings of fact and conclusions of law concluded that a drilling permit of the Railroad Commission grants no affirmative property rights but merely removes the conservation laws and regulations as a bar to drilling; that neither Nale nor Leath were cotenants with Longshore and Carroll in the permit granted Moore and have no interest in that permit; and that in drilling the well on the .17 acre Longshore tract under the Rule 37 permit issued to Moore, Carroll was exercising a legal right in connection with his oil and gas lease from Mrs. Longshore and did not breach any legal duty or violate any legal right to Nale or Leath, and that it would be inequitable for Nale or Leath to prevail in the suit.

■ While there is a factual difference between the case at bar and the case of Japhet v. McRae, supra, we think the principles of law announced in the latter case control the disposition of the issues presented in this case. Petitioner concedes that a Rule 37 permit is not itself a muniment of title. Petitioners do not claim title to any portion of the Longshore .17 acre tract. The fact that Carroll, the lessee, drilled the well under the Moore permit did not change the status of the title as conveyed by Leath and wife by general warranty deed to Mrs. Longshore. Mrs. Longshore, the owner of the fee, had the exclusive right to execute the lease to Mr. Carroll, and she and her lessee were the owners of all the oil produced from the well drilled on the .17 acre tract. Upon the purchase of the .17 acre, Mrs. Longshore became vested with the full legal title to said land, which included the title to all the oil—a part of the realty—produced from and brought to the surface through the well drilled by Mr. Carroll. Japhet v. McRae, supra, and cases therein cited. See also Ryan Consolidated Petroleum Corporation v. W. L. Pickens et al, supra. The deeds from Leath and wife to the respective grantees involved in this suit contained no reference to the Moore permit, nor did the deeds contain any language

susceptible to a construction which would entitle petitioners to an apportionment of royalties of any character.

■ Petitioners' contention that they are cotenants in the Moore Rule 37 permit and as such cotenants in the permit they have a property right, or a right in the nature of property, and, therefore, are the owners of a proportionate interest in the oil produced from the Longshore .17 acre, cannot be sustained. Rules and regulations of the Railroad Commission cannot effect a change or transfer of property rights. A Rule 37 permit cannot be made the basis for a claim of title. This is especially true in the case at bar for the reason that the Moore permit established the location of the well upon what later became the Longshore tract and not the land owned by petitioners. The petitioners were never in a position to exercise dominion over the segregated .17 acre Longshore tract by virtue of the Moore permit. The record reflects that petitioners recognized they had no property right in the Longshore tract by seeking from the Railroad Commission a permit to drill the Nale tract, and by refusing to enter into a pooling agreement with the Lessee, Carroll, and asserting the exclusive right to a well on the Nale tract.

In view of the holding on the point herein discussed, we find it unnecessary to decide the question of whether the petitioners were guilty of laches because of their failure to assert a claim to production from the Carroll well before the well was drilled.

The judgment of the Court of Civil Appeals is Affirmed.

Opinion delivered April 18, 1956.

Rehearing overruled May 16, 1956.

MR. JUSTICE WILSON concurring.

I disagree with the reasons given in the opinions of the Court, but concur in the result because the petitioners were not entitled to equitable relief.

Chief Justice Hickman and Associate Justice Garwood join in this view.

Opinion delivered April 18, 1956.

Rehearing overruled, May 16, 1956.