**Ada CHAPMAN, Appellant,**

v.

**Argus L. PARKS, Appellee.**

**No. 7057.**

Court of Civil Appeals of Texas.

Amarillo.

May 15, 1961.

Rehearing Denied June 12, 1961.

Gordon, Gordon & Buzzard, Pampa, Dougal C. Pope, Houston, for appellant.

Gassaway & Allen, Borger, Sanders, Scott, Saunders, Brian & Humphrey, Amarillo, for appellee.

NORTHCUTT, Justice.

On November 28, 1927 Ada Chapman joined by her husband, C. R. Chapman, for the consideration of $4,000 sold and transferred to Argus L. Parks by a general warranty deed all of the Northeast Quarter of Section No. 2 in Block HC of the H & OR Ry Co. Survey of Lands, Hutchinson County, Texas, containing 160 acres. On February 16, 1948 Parks joined by his wife, Irene Parks, executed and delivered an oil and gas lease to Shamrock Oil and Gas Corporation and oil has been produced under such lease ever since in 1948. On July 24, 1959, C. R. Chapman died. On December 21, 1959, Ada Chapman brought this suit seeking judgment against Parks for the sum of $80,000, less certain expenses, together with six per cent interest, being the sum Parks had received from the undivided one-half of the mineral interest in said 160 acres.

It was the contention of Mrs. Chapman that in 1927 she told Parks, who was her brother, that she would sell him all the surface and an undivided one half of the minerals of the 160 acres here involved for $25 per acre and that Parks agreed to purchase the surface and an undivided one half of the minerals in the said 160 acres for the sum of $25 per acre. It was further contended that it was agreed between Mrs. Chapman and Parks, prior to the execution of the deed by Mrs. Chapman and her hus-

band to Parks covering the 160 acres, that Mrs. Chapman, the property being her separate property, would convey and deed to Parks all of the undivided one half interest of the minerals in said 160 acres but that Parks would pay over to Mrs. Chapman when Parks received the same any and all sums which Parks would receive from said undivided one half mineral interest. Mrs. Chapman then pleaded that Parks was her brother and that they were very close and in reliance on the agreement between them, that Parks would pay her all sums that he received from said undivided one half mineral interest when he received same, she and her then husband, C. R. Chapman, executed the deed to Parks covering the surface as well as all the minerals in said 160 acres. Mrs. Chapman further pleaded Parks had no intention of keeping his promise at all times prior to the time of the execution of the deed and that if she had known that Parks had no intention of keeping his word and fulfilling his promise to pay her what he received from her undivided one half mineral interest, she would have never deeded the undivided one half mineral interest to him.

Parks answered denying all allegations of plaintiff's petition, saying the same were not true in whole or in part and then pleaded that he holds all the mineral interest in a direct and unbroken chain from the sovereignty of the soil and holds his title directly and immediately from Ada Chapman, and her then husband, by virtue of a general warranty deed dated December 24, 1927 and recorded in Vol. 45 at page 603 of the Deed Records of Hutchinson County, Texas. The record shows the deed in question of record in said Vol. 45 at page 603 was dated November 28, 1927 and was filed for record on December 24, 1927. Parks further pleaded Statutes of Limitation and asserted his limitation title in fee simple and in bar of all of plaintiff's suit or any part thereof and also pleaded the Statute of Frauds.

On May 23, 1960 Parks filed his motion for summary judgment attaching thereto the warranty deed from Ada Chapman and her husband, C. R. Chapman, dated November 28, 1927; Deed of Trust from Parks securing the payment of the notes mentioned in the deed from the Chapmans to Parks; a release by the Chapmans of the notes here mentioned; oil and gas lease from Parks and his wife, Irene Parks, to Shamrock Oil and Gas Corporation; a second lien agreement executed by the Chapmans dated December 15, 1927 and acknowledged December 27, 1927 granting the Federal Land Bank of Houston a first and superior lien to the Chapmans' notes mentioned in the deed dated November 28, 1927. In this second lien agreement the Chapmans stated the land in question was owned by Parks. Certificate of the Tax Collector as to payment of taxes was introduced and then affidavit of Parks to substantiate his pleadings and contention. There were also oral depositions of six persons.

Ada Chapman answered Parks's motion for summary judgment to substantiate her contention and contending this was not a suit to recover real estate but to recover personal property and since she was a married woman until July 24, 1959 when her husband died, the Statute of Limitation did not apply.

The trial court sustained Parks's motion for summary judgment holding the record conclusively showed that Parks's Claim of Title was sustained by the five and ten year statutes of adverse possession and that the summary judgment should be granted. From this judgment Mrs. Chapman perfected this appeal.

▪ Hereafter Mrs. Chapman, will be referred to as appellant and Parks as appellee. Appellant pleaded that the deed in question was for the surface as well as all of the minerals in the said 160 acres. There is no question but that oil, after it is separated from the soil, becomes personal property but until such severance, it constitutes an interest in the realty. Ever since appellant deeded the land in question to ap-

pellee in 1927 he has been in possession of the same and in a manner to complete his title under both Articles 5509 and 5510 of the Vernon's Ann.Texas Statutes.

Art. 5513 of the Vernon's Ann.Texas Statutes provides:

"Whenever an action for the recovery of real estate is barred by any provision of this title, the person having such peaceable and adverse possession should be held to have full title, precluding all claims."

Appellant sued for $80,000 that she contends appellee received from the sale of oil and gas from the said undivided one half mineral interest and that said sum was received by appellee as a trustee of a constructive trust of which she was the beneficiary. Appellant further pleaded she did not sell the one half mineral interest to appellee. If she did not sell the interest to appellee as provided in the deed, then appellee would be holding in trust the mineral interest which was a part of the realty and appellant's claim would be for the mineral interest that appellee had secured under the deed and by limitation and appellant's claim would be barred.

▆ The fact that appellee and appellant are brother and sister, and that appellant believed in and trusted appellee, is not believed to be sufficient to render the deed prima facie fraudulent and equally justifying the appellant to recover for the value of oil recovered from the land that appellant could not recover any interest in because of being barred by the Statute of Limitation. Goar et al. v. Thompson et al., 19 Tex.Civ.App. 330, 47 S.W. 61. The rule is well established in Texas that an adverse entry upon the surface of land extends downward and includes title to the underlying minerals where at the time of entry there had been no severance of the mineral estate. Broughton v. Humble Oil & · Refining Company, Tex.Civ.App., 105 S.W.2d 480, writ refused. The rule is equally as well established in Texas that

after the severance of the surface of the land and the mineral estate, the mere possession of the one will not ripen into a limitation to the other and that after severance of the oil and gas and mere adverse possession and use of the surface does not constitute adverse possession of the minerals under the surface. Grissom v. Anderson, 125 Tex. 26, 79 S.W.2d 619. Henderson v. Chesley, Tex.Civ.App., 229 S.W. 573, writ refused.

Here we have a case in which appellee has not only received a deed from appellant covering all the mineral interest, but his title has been made so perfected by uninterrupted possession that it becomes entitled to judgment because of the acts of possession which established his title. To permit appellant to recover a money judgment against appellee for the sale of minerals that he had secured title to by limitation would defeat the statutes above stated and would nullify the effect of the Statutes of Limitation.

▆ A covenant of general warranty in a deed warrants that the grantor has not conveyed the same estate or any right, title, or interest therein to any person other than the grantee, and that the property is free from encumbrances. Compton v. Trico Oil Company et al., Tex.Civ.App., 120 S.W.2d 534, writ refused.

▆ Certainly a grantor in a general warranty deed transfers all his interests in the land transferred when no exceptions are stated. We are of the opinion the case of Counce et al. v. Yount-Lee Oil Co., 5 Cir., 87 F.2d 572, 575, Writ of Certiorari refused Wilkinson v. Yount-Lee Oil Co., 302 U.S. 693, 58 S.Ct. 12, 82 L.Ed. 536, is directly in point in this case where it is stated:

"It is not strange then nor at all to be wondered at, that no case has been cited, none found by us, supporting the position appellants take, the judgment they seek. Indeed, no case except Bryan v. Weems, 29 Ala. 423, 65 Am.Dec. 407, has been cited to us in

which a claim at all like the one at bar was ever before advanced.

" [3, 4] Appellants say this is because the situation presented here, where married women are barred of their real but not of their personal action, hardly ever arises. But that cannot be the answer, for, if appellants are right, every owner of land who has lost his title by prescription or limitation would have a personal action against the prescriber, for oil, timber, or other things, taken from the land, within the limitation period for personal actions. The answer is to be more broadly sought and found. It is to be, it is found in the self-evident proposition, that it is a contradiction in terms to say, as the Texas Statutes and most other statutes of limitation do, that the effect of the bar of adverse possession is to give the possessor full title precluding all claims, and to say at the same time, that the possessor shall be liable in damages for his acts of possession done while his inchoate title was being perfected. It is to be found, not only in the terms of the Texas Statutes, but in the general theory which underlies prescription, the theory of relation by presumption, the theory that once matured, the title relates back to the beginning of the prescriptive period. Under that theory it is presumed that the origin of the title was rightful, not wrongful, that the possession which has matured it was in support, not in derogation of the rightful title, and that he, who by a possession perfect in the law has matured a title, has in theory of law been the owner of the title from the beginning. There is no place in the theory of prescription or limitation for the contention appellants put forward, that after the title has matured, the former owner of the land can call the limitation owner to account, for any of his actions done, on or to the land, in the course of the unchallenged possession, that has ripened his right and title to it. The principle of relation is a comprehensive and familiar one in the law of real property."

We are of the opinion the trial court was correct in holding as it did. The judgment of the trial court is affirmed.